MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
HONORIO CANDIA LIBRADO and
GILBERTO DARIO RAMIREZ RAMOS,
*individually and on behalf of others similarly*
*situated,*

                     *Plaintiffs*,

        -against-

476 AMSTERDAM LLC (D/B/A FRED'S),
AND JEREMY WLADIS,

                   *Defendants.*
-----------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION**
**UNDER 29 U.S.C. § 216(b)**

**ECF Case**

    Plaintiffs Honorio Candia Librado and Gilberto Dario Ramirez Ramos, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against 476 Amsterdam LLC (d/b/a Fred's) ("Defendant Corporation"), and Jeremy Wladis, ("Individual Defendant"), (collectively, "Defendants"), allege as follows:

<u>**NATURE OF THE ACTION**</u>

    1.    Plaintiffs are former employees of defendants 476 Amsterdam LLC (d/b/a Fred's), and Jeremy Wladis ("Individual Defendants"), (collectively "Defendants").

2.      Defendants own, operate, or control a restaurant/bar located at 476 Amsterdam Avenue, New York, New York 10024 under the name Fred's.

3.      Upon information and belief, individual defendant Jeremy Wladis serves or served as owner, manager, principal, or agent of Defendant Corporation and, through this corporate entity, operate or operated the restaurant/bar as a joint or unified enterprise.

4.      Plaintiffs were ostensibly employed as delivery workers, but they were required to spend a considerable part of their work day performing non-tipped, non-delivery duties, including but not limited to, various restaurant/bar duties such as assisting the food runner), packing deliveries, sweeping the sidewalk , refilling the sauce cups,  placing paper bags inside plastic bags and Transporting  items to and from another restaurant, (hereafter the "non-tipped, non-delivery duties").

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants without appropriate minimum wage for the hours that they worked each week.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked at the straight rate of pay.

7.      Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required greater or equal time spent in non-tipped, non-delivery duties.

8.      Under state law, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (12 N.Y.C.R.R. §146-2.9).

9.      Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying Plaintiffs at the minimum

wage rate and to enable them to pay Plaintiffs at the lower tip-credited rate), by designating them delivery workers instead of non-tipped employees.

10.     In addition, defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips.

11.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

12.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work without providing the minimum wage required by federal and state law and regulations.

13.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

14.     Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

16.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district. Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a restaurant/bar located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

### *Plaintiffs*

17.     Plaintiff Honorio Candia Librado ("Plaintiff Candia Librado" or "Mr. Candia Librado") is an adult individual residing in New York County, New York. Plaintiff Candia Librado was employed by Defendants from approximately March 2020 until on or about February 23, 2025.

18.     Plaintiff Gilberto Dario Ramirez Ramos ("Plaintiff Ramirez Ramos" or "Mr. Ramirez Ramos") is an adult individual residing in New York County, New York. Plaintiff Ramirez Ramos was employed by Defendants from approximately November 2018 until on or about April 2, 2025.

19.     Plaintiffs consent to being party Plaintiffs pursuant to 29 U.S.C. § 216(b), and bring these claims based upon the allegations herein as representative parties of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

### *Defendants*

20.     At all relevant times, Defendants owned, operated, or controlled a restaurant/bar located at 476 Amsterdam Avenue, New York, N.Y. 10024under the name "Fred's."

21.     Upon information and belief, 476 Amsterdam LLC (Defendant Corporation) is a domestic corporation organized and existing under the laws of the State of New York.  Upon

information and belief, defendant corporation maintains its principal place of business at 476
Amsterdam Avenue, New York, New York 10024 and its corporate headquarters at 1991
Broadway, New York, New York 10023.

22.    Defendant Jeremy Wladis is an individual engaging (or who was engaged) in
business in this judicial district during the relevant time period.  Defendant Jeremy Wladis is
sued individually in his capacity as owner, officer and/or agent of the Defendant Corporation.
Defendant Jeremy Wladis possesses operational control over Defendant Corporation, an
ownership interest in Defendant Corporation, or controls significant functions of Defendant
Corporation. He determined the wages and compensation of the employees of Defendants,
including Plaintiffs, and established the schedules of the employees, maintained employee
records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

23.    Defendants operate a restaurant/bar located in the Upper west Side section of
Manhattan in New York City.

24.    Individual defendant, Jeremy Wladis possesses operational control over
Defendant Corporation, possesses ownership interests in Defendant Corporation, and controls
significant functions of Defendant Corporation.

25.    Defendants are associated and joint employers, act in the interest of each other
with respect to employees, pay employees by the same method, and share control over the
employees.

26.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly
situated employees') working conditions, and over the policies and practices with respect to the

employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

27.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

28.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

29.    Upon information and belief, individual defendant Jeremy Wladis operates Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

    a.   failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a corporation,

    b.   defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c.   transferring assets and debts freely as between all Defendants,

    d.   operating Defendant Corporation for his own benefit as the sole or majority shareholder,

    e.   operating Defendant Corporation for his own benefit and maintaining control over it as a closed corporation,

    f.   intermingling assets and debts of his own with Defendant Corporation,

    g.   diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h. other actions evincing a failure to adhere to the corporate form.

30. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

31. In each year from 2019 to 2025, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

32. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant/bar on a daily basis were goods produced outside of the State of New York.

*Individual Plaintiffs*

33. Plaintiffs are former employees of Defendants who were ostensibly employed as delivery workers. However, they spent a considerable amount of time performing the non-tipped, non-delivery duties described above.

34. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Honorio Candia Librado*

35. Plaintiff Candia Librado was employed by Defendants from approximately March 2020 until on or about February 23, 2025.

36. Defendants ostensibly employed Plaintiff Candia Librado as a delivery worker.

37.    However, Plaintiff Candia Librado was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

38.    Although Plaintiff Candia Librado was ostensibly employed as a delivery worker, he spent over 20% of his work time each day performing non-delivery work throughout his employment with Defendants.

39.    Plaintiff Candia Librado regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

40.    Plaintiff Candia Librado's work duties required neither discretion nor independent judgment.

41.    Throughout his employment with Defendants, Plaintiff Candia Librado regularly worked in excess of 40 hours per week.

42.    From approximately March 2020 until on or about June 2020, Plaintiff Candia Librado worked from approximately 10:00 a.m. until on or about 4:00 p.m. Saturdays and Sundays (typically 12 hours per week).

43.    From approximately July 2020 until on or about January 2022, Plaintiff Candia Librado worked from approximately 12:00 p.m. until on or about 9:00 p.m. Saturdays and Sundays, from approximately 5:15 p.m. until on or about 9:45 p.m. Mondays and Tuesdays, from approximately 4:45 p.m. until on or about 10:00 p.m. on Thursdays and from approximately 5:00 p.m. until on or about 10:00 p.m. on Fridays (typically 37.33 hours per week).

44.    From approximately February 2022 until on or about October 2023, Plaintiff Candia Librado worked from approximately 12:00 p.m. until on or about 9:00 p.m. Saturdays and Sundays, from approximately 5:15 p.m. until on or about 10:00 p.m. Mondays, Tuesdays and

Thursdays and from approximately 5:00 p.m. until on or about 10:00 p.m. on Fridays (typically 37.25 hours per week).

45.     From approximately November 2023 until on or about February 2025, Plaintiff Candia Librado worked from approximately 4:00 p.m. until on or about 9:00 p.m. Saturdays and Sundays, from approximately 5:15 p.m. until on or about 10:00 p.m. Mondays and Thursdays and from approximately 5:00 p.m. until on or about 10:00 p.m. on Fridays (typically 24.5 hours per week).

46.     Throughout his employment with defendants, Plaintiff Candia Librado was paid his wages by check.

47.     From approximately March 2020 until on or about February 2025, Defendants paid Plaintiff Candia Librado $12.50 per hour.

48.     Defendants never granted Plaintiff Candia Librado a meal break or rest period of any length.

49.     Plaintiff Candia Librado was never notified by Defendants that his tips were being included as an offset for wages.

50.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Candia Librado's wages.

51.     In addition, Defendants withheld a considerable portion of the tips Plaintiff Candia Librado received from the clients; specifically, Defendants withheld $2.50 per hour from Plaintiff Candia Librado's tips and used this money to pay the delivery packer.

52.     Furthermore, Defendants did not provide Plaintiff Candia Librado with a statement of wages with each payment of wages, as required by NYLL 195(3).

53.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Candia Librado regarding overtime and wages under the FLSA and NYLL.

54.     Defendants did not give any notice to Plaintiff Candia Librado, in English and in Spanish (Plaintiff Candia Librado's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

55.     As a result of Defendants' failure to provide Plaintiff Candia Librado with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

56.     Defendants required Plaintiff Candia Librado to purchase "tools of the trade" with his own funds—including an electric bicycle, one bicycle, a helmet, two sets of lights, a vest, a lock and chain, and to pay for bicycle repairs in the amount of approximately $250 per year.

*Plaintiff Gilberto Dario Ramirez Ramos*

57.     Plaintiff Ramirez Ramos was employed by Defendants from approximately November 2018 until on or about April 2, 2025.

58.     Defendants ostensibly employed Plaintiff Ramirez Ramos as a delivery worker.

59.     However, Plaintiff Ramirez Ramos was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

60.     Although Plaintiff Ramirez Ramos was ostensibly employed as a delivery worker, he spent over 20% of his work time each day performing non-delivery work throughout his employment with Defendants.

61.     Plaintiff Ramirez Ramos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

- 10 -

62.     Plaintiff Ramirez Ramos's work duties required neither discretion nor independent judgment.

63.     Throughout his employment with Defendants, Plaintiff Ramirez Ramos regularly worked in excess of 40 hours per week.

64.     From approximately May 2019 until on or about May 2022, Plaintiff Ramirez Ramos worked from approximately 5:30 p.m. until on or about 10:30 p.m. Sundays through Fridays (typically 36 hours per week).

65.     From approximately June 2022 until on or about February 2025, Plaintiff Ramirez Ramos worked from approximately 5:30 p.m. until on or about 10:00 p.m. Wednesdays and Saturdays, and from 5:30 p.m. until on or about 9:30 p.m. Tuesdays and Sundays (typically 17 hours per week).

66.     From approximately February 2025 until on or about April 7, 2025, Plaintiff Ramirez Ramos worked from approximately 5:00 p.m. until on or about 10:00 p.m. on Wednesdays, from approximately 5:30 p.m. until on or about 10:00 p.m. on Fridays and from approximately 5:00 p.m. until on or about 9:30 p.m. on Sundays (typically 14 hours per week).

67.     Throughout his employment with Defendants, Plaintiff Ramirez Ramos was paid his wages by check.

68.     From approximately May 2019 until on or about April 7, 2025, Defendants paid Plaintiff Ramirez Ramos $12.50 per hour.

69.     Defendants never granted Plaintiff Ramirez Ramos a meal break or rest period of any length.

70.     Plaintiff Ramirez Ramos was never notified by Defendants that his tips were being included as an offset for wages.

71.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramirez Ramos's wages.

72.    In addition, Defendants withheld a considerable portion of the tips Plaintiff Ramirez Ramos received from the clients; specifically, Defendants withheld $2.50 per hour from Plaintiff Ramirez Ramos's tips and used this money to pay the delivery packer.

73.    Defendants required Plaintiff Ramirez Ramos to sign documents, the contents of which he was not allowed to review in detail.

74.    Furthermore, in order to get paid, Plaintiff Ramirez Ramos was required to sign a document the contents of which he was not allowed to review.

75.    No notifications, either in the form of posted notices or other means, were given to Plaintiff Ramirez Ramos regarding overtime and wages under the FLSA and NYLL.

76.    Defendants did not give any notice to Plaintiff Ramirez Ramos, in English and in Spanish (Plaintiff Ramirez Ramos's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

77.    As a result of Defendants' failure to provide Plaintiff Ramirez Ramos with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

78.    Defendants required Plaintiff Ramirez Ramos to purchase "tools of the trade" with his own funds—including two bicycles, two vests, a chain and lock, a helmet, a delivery bag and $100 in bike repair and maintenance.

*Defendants' General Employment Practices*

- 12 -

79.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work without paying them appropriate minimum wage as required by federal and state laws.

80.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

81.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

82.     As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

83.     Defendants unlawfully misappropriated charges purported to be gratuities received by Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

84.     Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

85.     At no time did Defendants inform Plaintiffs that they had reduced their hourly wage by a tip allowance.

86.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

87.    Defendants required Plaintiffs to perform general non-delivery, non-tipped restaurant/bar tasks in addition to their primary duties as delivery workers.

88.    Plaintiffs were employed ostensibly as tipped employees by Defendants, although they spent several hours per day performing non-tipped duties.

89.    These Plaintiffs were paid at a rate that was lower than the required tip-credited rate by Defendants.  However, under state law, Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less). 12 N.Y. C.R.R. § 146-2.9.

90.    Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

91.    Plaintiffs' duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated general restaurant/bar work with duties including the non-tipped, non-delivery duties described herein.

92.    In violation of federal and state law, as discussed above, Defendants classified Plaintiffs as tipped employees and did not even pay them at the required tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

93.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

94.    Defendants failed to inform Plaintiffs that their tips would be credited towards the payment of the minimum wage.

95.     Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

96.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

97.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

98.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former delivery workers.

99.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

100.    Defendants failed to provide Plaintiffs and other employees with wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

101.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

102.    As a result of Defendants' failure to provide Plaintiffs and other employees a Notice of Pay Rate or accurate wage statements with each payment of their wages, Plaintiffs and other employees were prevented from: (i) comparing their rate of pay to their hours worked; (ii) realizing that they were underpaid; and (iii) advocating for themselves and/or taking appropriate action to obtain the payments due to them.

## FLSA COLLECTIVE ACTION CLAIMS

103.    Plaintiffs bring their FLSA minimum wage and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants on or after the date that is three years before the filing of this Complaint (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

104.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions.

105.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the minimum wage.

106.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have been subject to Defendants' willful failure to keep records required by the FLSA.

107.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

108.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

109.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

110.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

111.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

112.    In violation of 29 U.S.C. § 206(a), Defendants failed to pay Plaintiffs at the applicable minimum hourly rate.

113.    Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

114.    Plaintiffs were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

115.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

116.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

117.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

118.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

119.    Plaintiffs were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (VIOLATION OF THE NOTICE
### REQUIREMENTS OF THE NEW YORK LABOR LAW)

134.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

135.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer,

as required by NYLL §195(1).

136.    As a result of Defendants' failure to furnish an accurate wage notice to Plaintiffs, Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

137.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**FOURTH CAUSE OF ACTION**
**(VIOLATION OF THE WAGE STATEMENT PROVISIONS**
**OF THE NEW YORK LABOR LAW)**

137.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

138.    With each payment of wages, Defendants failed to provide Plaintiffs with a statement listing each the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

139.    As a result of Defendants' failure to furnish accurate statements to Plaintiffs, Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

140.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**FIFTH CAUSE OF ACTION**
**(VIOLATION OF THE TIP WITHHOLDING PROVISIONS**
**OF THE NEW YORK LABOR LAW)**

141.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

142.     Defendants unlawfully and without permission from Plaintiffs misappropriated and withheld gratuities paid by customers which should have been retained by Plaintiffs.

143.     Defendants' action violated NYLL §196-d.

144.     Defendants are liable to Plaintiffs in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (RECOVERY OF EQUIPMENT COSTS)

145.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

146.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

147.     Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)     Declaring that Defendants' violation of the provisions of the FLSA were willful

as to Plaintiffs (including the prospective collective class members);

(d)    Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid minimum wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(e)    Awarding Plaintiffs (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(f)    Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(g)    Declaring that Defendants violated the notice requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(h)    Declaring that Defendants violated the tip withholding provisions of the New York Labor Law;

(i)    Declaring that Defendants' violations of the New York Labor Law were willful as to Plaintiffs;

(j)    Awarding Plaintiffs damages for the amount of unpaid minimum wages, and for any improper deductions or credits taken against wages and improper withholding of gratuities, as applicable;

(k)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(l)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred

percent (100%) of the total amount of minimum Wages, shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(m)    Awarding Plaintiffs (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

(n)     Awarding Plaintiffs (including the prospective collective class members) the expenses incurred in this action, including costs and attorneys' fees;

(o)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(p)    All such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
May 29, 2025

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    _____s/Michael Faillace_____
Michael A. Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
_____

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

May 16, 2025

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Gilberto Dario Ramirez Ramos

Legal Representative / Abogado:    <u>Michael Faillace Esq.</u>

Signature / Firma:          _____

Date / Fecha:               <u>May 16, 2025</u>_____

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

michael@faillacelaw.com

May 13, 2025

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                 Honorio Candia Librado

Legal Representative / Abogado:     Michael Faillace & Associares, P.C.

Signature / Firma:

Date / Fecha:                  May 12, 2025

*Certified as a minority-owned business in the State of New York*